IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:20-cr-7-17 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| ANDREW KNEPP, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Andrew Knepp, a defendant charged with participation in a 42-defendant methamphetamine distribution ring, filed the instant motion requesting the Court revoke Magistrate Judge Keith A. Pesto's order that Knepp be detained pending trial. Knepp argues he has presented sufficient evidence to rebut the presumption of detention in 18 U.S.C. § 3142 for controlled substance crimes and that the Court should grant his release pending trial. (ECF No. 685)

Based on the evidence before the Court, the Court finds that: (1) Knepp has failed to rebut the presumption of detention contained in 18 U.S.C. § 3142; and (2) even if Knepp has rebutted that presumption, the Government has established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any person or the community. Accordingly, the Court holds that detention is appropriate and **DENIES** Knepp's Motion.

I. Background

Knepp is charged with one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and

substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846. (ECF No. 480) The Government conducted an extensive wiretap investigation into a large methamphetamine distribution ring spanning several Pennsylvania counties that Knepp was alleged to have been a participate in.

Pretrial Services ("PTS") filed a report ("PTS Report") recommending Knepp be released on an unsecured bond subject to the following conditions: (1) participate in inpatient or outpatient substance abuse therapy and counseling if PTS or his supervising officer considers it advisable; (2) refrain from the unlawful use or possession of a controlled substance; (3) refrain from excessive use of alcohol; (4) submit to any testing required by PTS or his supervising officer to determine whether he is using a prohibited substance; (5) not tamper with, obstruct, or attempt to tamper with or obstruct any substance testing or required electronic monitoring; (6) submit to a mental health evaluation if PTS or his supervising officer considers it advisable; (7) report to PTS any change in address, telephone number, or employment status; (8) not travel outside the Western Districts of Pennsylvania; (9) not to obtain a passport and surrender any existing passport to PTS; and (10) refrain from possessing a firearm, destructive device, or other dangerous weapon. (PTS Report at 5–6)

Magistrate Judge Pesto held a detention hearing on September 2, 2020. (ECF No. 593) Magistrate Judge Pesto found Knepp had presented sufficient evidence to rebut the presumption of detention for controlled substance crimes with maximum penalties equal to or exceeding ten years imprisonment. (ECF No. 600 at 1–2) But Magistrate Judge Pesto found that the government had proved, by clear and convincing evidence, that no release condition or combination of release conditions would reasonably assure public safety. (*Id.* at 2) Magistrate Judge Pesto concluded

that detention pending trial was warranted because the weight of the evidence against Knepp was strong and Knepp had a history of alcohol or substance abuse.. (*Id.*) In addition, Magistrate Judge Pesto noted that, although the bond in one of Knepp's pending criminal cases in state court was sufficient to address the risk of Knepp failing to appear, he was a major distributor for Brolin and that relationship continued until Brolin was arrested. (*Id.* at 3) Therefore, Magistrate Judge Pesto ordered Knepp detained pending trial. (*Id.*)

Knepp filed a Motion for Revocation or Amendment of Detention Order on October 2, 2020, asking the Court to reverse Magistrate Judge Pesto's Order of Detention and release him pending trial. (ECF No. 685) The Court held a hearing on the Motion by videoconference on November 22, 2020. (ECF No. 438)

## II.   Findings of Fact

The Court makes the following findings of fact by clear and convincing evidence:[1]

1. Detective Eric Harpster was the case agent in charge of investigating Alexis Brolin for methamphetamine trafficking. (ECF No. 796 at 13:2–4)

2. Detective Harpster has been employed by the City of Pittsburg Narcotics Unit and has been assigned to the Drug Enforcement Administration ("DEA") Task Force for approximately twelve years. (*Id.* at 12:22–13:1)

3. The investigation into methamphetamine trafficking began in July 2019. (*Id.* at 13:5–7)

---

[1] In making these findings, the Court relies on the transcript from the detention hearing before the Court (ECF No. 796), Magistrate Judge Pesto's Order of Detention (ECF No. 600), the PTS Report based on information Knepp provided to Pretrial Services and verified by his girlfriend and co-defendant, Nicole Gaines, a Memorandum from Pretrial Services updating the criminal history section of the PTS Report, a Memorandum from PTS stating that Knepp's parents would allow him to reside with them if released, and three bench warrants from Clearfield County, Pennsylvania (Gov. Exhibits A–C).

3

4. As part of the investigation, a confidential source and an undercover police officer conducted ten controlled buys of methamphetamine of up to one ounce per transaction from Brolin in July and August of 2019. (*Id.* at 13:8–21)

5. The total amount of methamphetamine purchased from Brolin in those ten transactions was 4.4 ounces (126 grams). (*Id.* at 15:14–17)

6. On July 24, 2019, during one of the controlled buys from Brolin, the undercover police officer observed Knepp and his girlfriend, Nicole Gaines, at Brolin's residence. (*Id.* at 13:22–14:12; PTS Report at 1)

7. Knepp and Gaines were Brolin's suppliers of methamphetamine in July and August 2019. (ECF No. 796 at 14:2–23)

8. On August 2, 2019, the undercover police officer drove Brolin to meet with Knepp in order to complete a methamphetamine transaction. (*Id.* at 14:18–23)

9. During the investigation, Brolin became subject to a wiretap and his communications were intercepted and monitored. (*Id.* at 15:3–22)

10. Knepp and Gaines were unable to supply Brolin with sufficient methamphetamine, so Brolin found another supplier for methamphetamine. (*Id.* at 15:18–16:1)

11. After Brolin found a new supplier for methamphetamine, Brolin began supplying Knepp and Gaines with methamphetamine. (*Id.*)

12. Knepp continued to be involved in Brolin's methamphetamine distribution organization as a redistributor of methamphetamine until April 2020, when Brolin was arrested. (*Id.* at 16:2–11, 20:10–18)

13. On February 19, 2020, Brolin texted Gaines asking whether she and Knepp could "go through" a quarter pound (four ounces) of methamphetamine and be able to pay for the methamphetamine a few days later or whether they only wanted two ounces of methamphetamine. (*Id.* at 16:12–23)

14. The reply from Gaines's phone number was: "This is Andy. I'm waking her up, but definitely the four; have almost three gone today." (*Id.* at 16:24–17:20)

15. A dose of methamphetamine is between a quarter of a gram and a gram. (*Id.* at 17:21–18:4)

16. A gram of methamphetamine has a street value of approximately $25 for a quarter gram and between $80 to $100 for a gram. (*Id.*)

17. Four ounces (approximately 112 grams) of methamphetamine would be between 112 and 448 individual doses of methamphetamine and would have a street value of between $8,960 and $11,200. (*Id.*)

18. Brolin was arrested on April 4, 2020, returning to his residence from Erie, Pennsylvania, with two pounds of methamphetamine. (*Id.* at 19:13–19)

19. After Brolin was taken into custody, the police executed a search warrant at his residence. (*Id.* at 19:20–23)

20. At the time the search warrant was executed, Tammie Brolin, Gaines, and Knepp were at Brolin's residence waiting for Brolin to return with the methamphetamine. (*Id.* at 19:24–20:9)

21. During the search of Brolin's residence, the police recovered methamphetamine from Knepp's possession. (*Id.* at 20:6–7)

22. Throughout the course of the investigation, Knepp was also a user of methamphetamine. (*Id.* at 21:2–5)

23. Knepp reports having used methamphetamine and heroin on a daily basis prior to his arrest. (PTS Report at 3)

24. Knepp attended outpatient treatment for substance abuse in 2017 and 2019.[2] (*Id.*)

25. Knepp has a misdemeanor conviction for theft and receiving stolen property in 1996 when he was eighteen years old.[3] (*Id.* at 4)

26. Knepp's release plan includes him living with his parents, who would serve as his third-party custodians. (ECF No. 796 at 10:2–11:10)

27. Knepp had eight active warrants for his arrest as of September 17, 2020.[4] (Gov. Exhibits A–C)

28. Knepp has multiple active warrants for his arrest based on traffic citations in Clearfield County. (*Id.*)

29. According the Knepp's counsel, the active bench warrants cannot be resolved until Knepp appears in court, which he cannot do as he is detained in Cambria County Jail for the pending charges in this case. (ECF No. 796 3:6–4:7)

30. Knepp had a warrant for his arrest pending from 2005 to 2009 related to his 1996 conviction. (PTS Report at 4)

---

[2] The PTS Report does not state whether Knepp completed the treatment or provide any further details about the outpatient treatment.

[3] There is a dispute about whether this conviction was a felony or a misdemeanor. (ECF No. 796 at 24:11–29:15) Based on the evidence before it, the Court will treat the conviction as a misdemeanor.

[4] Prior to the hearing, Knepp's attorney resolved some of the warrants. (ECF No. 796 at 3:2–21)

31. Knepp was arrested and charged with possession of a controlled substance and possession of drug paraphernalia on March 4, 2020, in Clearfield County, Pennsylvania, but the charges were subsequently dismissed. (PTS Report at 4; PTS Memorandum)

32. Knepp has pending charges in Clearfield County for possession with intent to deliver a controlled substance, possession of a controlled substance, and possession of drug paraphernalia on April 4, 2020, arising out of the execution of the search warrant of Brolin's residence. (PTS Report at 5; PTS Memorandum)

33. Knepp has pending misdemeanor charges in Clearfield County for: (1) operating a vehicle without a valid inspection; (2) possession, sale, or use of an altered, forged, or counterfeited title, registration card, license plate, driver's license, inspection certificate, or proof of insurance; and (3) fraudulent alteration, forgery, or counterfeit of a certificate of title, registration card, or license plate. (PTS Memorandum)

III. **Conclusions of Law**

In cases where the maximum term of imprisonment exceeds ten years and involves a violation of the Controlled Substances Act, there is a rebuttable presumption that the defendant is to be detained pending trial. 18 U.S.C. § 3142(e)(3)(A). To succeed in rebutting this presumption, a defendant must "produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). In determining whether the defendant has rebutted the presumption of detention, the Court must consider the following factors: (1) the "nature and circumstances of the offense," including crimes involving violence or controlled substances; (2) the weight of the evidence; (3) the defendant's history and characteristics, including ties to the

community, substance abuse, physical and mental health, record of appearing at court proceedings, and whether the alleged offense occurred while on probation or parole, among others; and (4) the "nature and seriousness of the danger to any person or the community" posed by release.  18 U.S.C. § 3142(g).

If the defendant rebuts the presumption of detention, the government must then show that there is no condition or combination of conditions that will reasonably assure either the defendant's appearance or the safety of the community.  *Id.* §§ 3142(e), 3142(f).  The government must prove that detention is necessary to ensure public safety by clear and convincing evidence, and risk of flight by a preponderance of the evidence.  *Id.* § 3142(f)(2); *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986).  The same factors that guide the Court in determining whether the defendant has rebutted the presumption of detention guide the Court's analysis in determining whether the government has met its own burden.  *United States v. Gidney*, No. 3:20-cr-7-12, 2020 WL 4340307, at *3 (W.D. Pa. July 28, 2020).

### A. Knepp Has Not Rebutted the Presumption of Detention

The Court holds that, based on the evidence before it, Knepp has failed to rebut § 3142's presumption of detention.  The first factor—the nature and circumstance of the charged offense—favors detention.  Knepp is charged with conspiracy to distribute and possess with intent to distribute large amounts of methamphetamine, an offense which Congress recognized the seriousness of by creating a rebuttable presumption in favor of detention.  *See* 18 U.S.C. § 3142(e)(3)(A).  Knepp has failed to produce credible evidence to contradict the seriousness of the offense, or the risk to the community that the offense poses.

The second factor—the weight of the evidence against Knepp—also favors detention. At the time Knepp was Brolin's supplier of methamphetamine, the police conducted ten controlled buys from Brolin of up to an ounce of methamphetamine per transaction, totaling 4.4 ounces. (ECF No. 796 at 13:8–21; 15:14–17)  Then, when Brolin began supplying Knepp with methamphetamine, police intercepted communications between Knepp/Gaines and Brolin over the course of over six months, including regarding a single transaction involving four ounces of methamphetamine. (*Id.* at 16:12–18:4) Knepp and Gaines were also observed at Brolin's residence on multiple occasions, including after Brolin was arrested.  (*Id.* at 13:22–14:12, 19:24–20:9)  In addition, the police seized methamphetamine from Knepps' person. (*Id.* at 20:6–7) Thus, there is strong evidence of Knepp's involvement in a conspiracy to distribute methamphetamine.

The third factor—the nature and characteristics of the defendant—also favors detention.[5] Knepp does not have an extensive criminal record.  However, he has a history of noncompliance. He had an outstanding warrant for his arrest from 2005 to 2009 and he had numerous outstanding bench warrants at the time he was arrested in this case. (Gov. Exhibits A–C)  In addition, Knepp has demonstrated a substance abuse problem—he reports using heroin and methamphetamine daily prior to his arrest. (PTS Report at 3; ECF No. 796 at 21:2–5)

---

[5] The "Assessment of Nonappearance" portion of the PTS Report set forth the following reasons that the Defendant poses a risk of nonappearance: (1) offense charged and/or Defendant's conduct during arrest for instant offense; (2) mental health history; (3) substance abuse history; (4) lack of verifiable, legitimate employment; (5) pending charges; and (6) pretrial, probation, parole, or supervised release status and compliance. (PTS Report at 5)

Finally, the fourth factor—the nature of the seriousness and danger to the community—also favors detention.[6] This factor requires the Court to "assess the totality of the evidence presented." *United States v. Santiago-Pagan*, No. 1:08-cr-424, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009). Looking at the totality of the evidence before it, the Court finds that Knepp presents a danger to the community if the Court does not order him detained pending trial. The government has presented evidence that Knepp supplied methamphetamine to Brolin and then became a significant redistributor of methamphetamine for Brolin. The transactions Knepp was involved in were for quantities of methamphetamine that constituted dozens or hundreds of individual doses of methamphetamine at a time with a street value of hundreds or thousands of dollars per transaction. Knepp was consistently distributing methamphetamine throughout the course of the investigation, a period of over nine months. The Court thus finds that Knepp poses a significant danger to the community if he is not detained pending trial.

### B. Even if Knepp Has Rebutted the Presumption of Detention, the Government Has Shown by Clear and Convincing Evidence that No Condition or Combination of Conditions Can Reasonably Assure the Safety of the Community

For the reasons detailed above, *see supra* Section IV.A, the Court holds that, even if Knepp has rebutted the presumption of detention, the Government has proven by clear and convincing evidence that no condition or combination of conditions of release could reasonably assure public safety.

---

[6] The "Assessment of Danger" portion of the PTS Report set forth the following reasons that the Defendant poses a risk of danger: (1) nature of the instant offense; (2) substance abuse history; (3) mental health history; (4) pretrial, probation, parole, or supervised release status and compliance; (5) criminal association; and (6) pattern of similar criminal activity history. (PTS Report at 5)

As noted above, Knepp is charged with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, which is a serious offense and poses a danger to the community. The weight of the evidence is strong and favors detention. Knepp's background suggests a substantial likelihood of him committing further drug offenses if released. Finally, based on all these findings, there is a substantial risk to the safety of the public if Knepp is released.

The Court finds that the suggested conditions of release are inadequate to reasonably assure community safety as Knepp may to distribution of narcotics if released. Accordingly, the Court holds that the Government has presented clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the public were it to release Knepp pending trial.

### V. Conclusion

After carefully considering the circumstances in this case, the Court finds that the factors set forth in 18 U.S.C. § 3142(g) weigh in favor of detention. Knepp has not rebutted the presumption of detention, and even if he had, the Government has put forth clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of others were Knepp released pending trial. Accordingly, the Court denies Knepp's motion.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 3:20-cr-7-17 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| ANDREW KNEPP, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

NOW, this 18th day of December, 2020, upon consideration of Defendant Andrew Knepp's Motion for Revocation or Amendment of Detention Order (ECF No. 685), and for the reasons set forth in the accompanying Memorandum Opinion, the Court **HEREBY FINDS** that Defendant has failed to rebut the presumption of detention and, even if he has, the Government has established, by clear and convincing evidence, that "no condition or combination of conditions will reasonably assure the safety of any other person and the community" if Defendant is released pending trial. Defendant's Motion for Revocation or Amendment of Detention Order (ECF No. 685) is therefore **DENIED.**

BY THE COURT

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**